UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re

    WESTGATE NURSING HOME, INC.,         Case No. 13-21665 (PRW)

    Debtor.

**DECISION AND ORDER
GRANTING IN LIMITED PART
AND DENYING IN ALL OTHER RESPECTS
CREDITORS' JOINT MOTION TO RECONSIDER
AND VACATE THE FINAL DECREE**

PAUL R. WARREN, United States Bankruptcy Judge

## OVERVIEW

Before the Court in this dismissed Chapter 11 case is the Joint Motion to Reconsider and Vacate the Final Decree of Dismissal ("Joint Motion"), filed by Arent Fox LLP, as attorneys for the Official Committee of Unsecured Creditors, and Harris Beach PLLC, as both attorneys for the Court-appointed Patient Care Ombudsman, Eric Huebscher, and on their own behalf (collectively "movants"). The Joint Motion is brought under Rule 59(e) and Rule 60(a) of the Federal Rules of Civil Procedure ("FRCP") and seeks to vacate the final decree of dismissal in this case—in order to have the Court rule on applications for professional fees and expenses. The Joint Motion was filed after the Court's entry of a consent order dismissing the case on August 26, 2014. The movants did not request and the order of dismissal did not include a retention-of-jurisdiction provision. Thus, the issue is whether the Court should modify the order

1

of dismissal to retain jurisdiction over fee applications, where no party in interest made a request for the Court's retention of jurisdiction prior to the entry of the order of dismissal.

For the reasons that follow, the Joint Motion is **GRANTED in limited part** for the purpose of correcting a clerical error in the docket text of ECF No. 250. The Joint Motion is **DENIED in all other respects** because (1) the movants fail to demonstrate grounds for altering the dismissal order under Rule 60(a) FRCP and (2) the Court did not retain subject matter jurisdiction to make post-dismissal fee determinations in this case, rendering the applications for compensation moot at dismissal.

## JURISDICTION

The Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and 28 U.S.C. § 1334(b). The following constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 52 FRCP, made applicable by Rule 7052 of the Federal Rules of Bankruptcy Procedure ("FRBP").

## FACTS

Westgate Nursing Homes, Inc. ("Debtor") filed a voluntary Chapter 11 bankruptcy petition on November 12, 2013. Under § 333 of Title 11 of the United States Code ("Bankruptcy Code"), the Court directed that the United States Trustee ("UST") appoint a patient care ombudsman ("PCO"). The UST appointed Eric Huebscher as PCO. Under § 1102 of the Bankruptcy Code, the UST also appointed an Official Committee of Unsecured Creditors ("Creditors' Committee"). With the Court's approval and pursuant to §§ 327 and 1103 of the Bankruptcy Code, the Creditors' Committee retained both professionals and legal counsel, including Arent Fox LLP ("Arent Fox") as legal counsel and CBIZ Accounting, Tax and

Advisory of New York, LLC ("CBIZ Accounting") as a financial advisor. Also with Court approval, the PCO retained Harris Beach PLLC ("Harris Beach") as legal counsel.

Because of continuing losses to the Debtor's estate during the eight months of bankruptcy protection, the UST filed a motion to convert the case to Chapter 7, or in the alternative, to dismiss the case under § 1112(b) of the Bankruptcy Code on August 5, 2014 (ECF No. 221). The UST motion was noticed for a hearing to be held on August 28, 2014. At the time that the UST motion was filed, fee applications previously submitted by CBIZ Accounting, Arent Fox, the PCO, and Harris Beach were pending before the Court. The deadlines for objections to the applications for professional fees expired, without objection, on July 24, 2014, July 28, 2014, August 18, 2014, and September 2, 2014 as to CBIZ Accounting, the PCO, Arent Fox, and Harris Beach, respectively.

The UST motion to convert or dismiss remained pending for three weeks, awaiting the return date. The Creditors' Committee joined in the UST motion to convert or dismiss on August 12, 2014, indicating that it "reserve[d] the right to further address the motion and any related pleadings or other ancillary issues either by further submission . . . , at oral argument or by testimony to be presented at any hearing" (ECF No. 235 ¶ 1). During this time, however, none of the appointed professionals or legal counsel filed papers in connection with the pending UST motion, requesting that the Court retain jurisdiction over their applications for compensation. On August 26, 2014, a stipulated order between the Debtor and the UST dismissing the case was filed with the Court by the UST—along with a verbal representation that Arent Fox and the professionals it represented, and Harris Beach and the professional it represented consented to the entry of an order of dismissal (ECF No. 239). The consent order did not contain a retention-of-jurisdiction provision or any reference to the pending fee

3

applications. However, it did contain a condition precedent to dismissal, requiring full payment of outstanding quarterly fees to the UST by August 29, 2014. The Court entered the conditional consent order of dismissal on August 26, 2014, two days in advance of a scheduled hearing on the motion to convert or dismiss (ECF No. 241).

On August 27, 2014, Harris Beach submitted a letter to the Court by which it inquired on its own behalf and on behalf of the PCO whether the Court would rule on pending and future fee applications despite dismissal of the case (ECF No. 242). On August 28, 2014, the Court convened the scheduled hearing on the motion to convert or dismiss, at which no party in interest appeared. Several hours later, the Court received a letter from Arent Fox, mirroring the Harris Beach letter and asking whether the Court would rule on pending fee applications despite dismissal of the case (ECF No. 245). Neither letter requested that the Court treat the letter as a motion. Both letters asserted that the Court continued to have jurisdiction to consider the award of fees despite dismissal of the bankruptcy case. A Final Decree and Order Closing Case was entered on August 29, 2014 (ECF No. 250).

On September 12, 2014, Arent Fox and Harris Beach filed the Joint Motion to Reconsider and Vacate the Final Decree of Dismissal pursuant to Rule 59(e) and 60(a) FRCP, and Rules 9023 and 9024 FRBP (ECF No. 252). By Order dated September 15, 2014, the Court administratively reopened the Chapter 11 case to consider the post-dismissal Joint Motion (ECF No. 253). On September 19, 2014, the Debtor filed a timely response in opposition to the Joint Motion.

## ARGUMENTS

The movants argue that the Court should vacate and amend the Final Decree of Dismissal to "correct the mistake arising from the oversight of safeguarding the estate professionals' non-

bankruptcy rights" (ECF No. 252 at ¶ 12). They ask the Court to vacate the Final Decree closing the case for the limited purpose of reviewing pending and future fee applications of these professionals (ECF No. 252 at ¶ 9). Their Joint Motion is brought pursuant to Rule 59(e) FRCP and Rule 9023 FRBP, which permit the court to alter or amend a judgment to rectify clerical mistakes within fourteen days[1] of entry of judgment. They also move in the alternative pursuant to Rule 60(a) FRCP and Rule 9024 FRBP. The Debtor objects, arguing that the fee applications have been rendered moot by entry of the order of dismissal because there is no longer a bankruptcy estate (ECF No. 260).

## ANALYSIS

Procedurally, the movants bring their Joint Motion to vacate the Final Decree under Rule 59(e) and Rule 60(a) FRCP. However, vacatur of the "Final Decree" closing the case would not affect the dismissal order—and it is ultimately the dismissal order that the movants seek to revisit. The Court would note that the fourteen-day time period to revisit the dismissal order under Rule 59 FRCP, as shortened by Rule 9023 FRBP, has expired. Thus, Rule 59 is not a viable avenue for altering the dismissal order. The movants also seek relief under Rule 60(a) FRCP, which provides that the "court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment." Rule 60(a) FRCP imposes no time limitation. Fed. R. Civ. P. 60(a); *Truskoski v. ESPN, Inc.*, 60 F.3d 74, 77 (2d Cir. 1995). "A motion under Rule 60(a) is available only to correct a judgment, 'for the purpose of reflecting accurately a decision that the court actually made.'" *Hodge ex rel. Skiff v. Hodge*, 269 F.3d 155, 158 (2d Cir. 2001) (quoting *Truskoski*, 60 F.3d at 77). The Second Circuit has explained that the

---

[1] The twenty-eight day time period under Rule 59(e) FRCP is shortened to fourteen days by Rule 9023 FRBP.

"heart of the distinction between an error that is correctable under Rule 60(a) and one that is not is that a correction under Rule 60(a) cannot alter the substantive rights of the parties, but rather may only correct the record to reflect the adjudication that was actually made." *Dudley ex rel. Estate of Patton v. Penn—Am. Ins. Co.*, 313 F.3d 662, 665 (2d Cir. 2002). An amended judgment should not "reflect a new and subsequent intent of the court," but should conform the judgment with the "contemporaneous intent of the court." *Robert Lewis Rosen Assocs., Ltd. v. Webb*, 473 F.3d 498, 505 n.11 (2d Cir. 2007).

Bearing in mind the narrow scope of Rule 60(a) FRCP, the Court vacates the Final Decree, but only for the limited purpose of correcting the docket text associated with ECF No. 250. Entry of a "final decree" closing the case under Rule 3022 FRBP was a clerical error because the Debtor's bankruptcy estate was never "fully administered." Rather, the case was dismissed under § 1112(b) of the Bankruptcy Code. Accordingly, ECF No. 250 should be corrected to reflect that the case was "administratively closed" as a result of dismissal of the case under § 1112(b) of the Bankruptcy Code.

As to the movants' further and ultimate request that the Final Decree be vacated to consider fee applications of estate professionals, the request is denied because the motion does not provide proper grounds to alter the judgment under Rule 60(a) FRCP. At the time of the entry of the dismissal order, the Court did not intend to retain jurisdiction over professional fee applications because the parties had not asked the Court to retain jurisdiction over them. Thus, the Court had no opportunity to consider granting that request prior to or contemporaneously with its entry of the order of dismissal. The dismissal order properly reflected the adjudication that the Court made—that it only retained jurisdiction over the outstanding UST quarterly fees and only until August 29, 2014 (*See* ECF No. 241).

Even if the movants had articulated proper grounds to alter the dismissal order under Rule 60(a), their request that the Court make post-dismissal fee determinations is denied for lack of subject matter jurisdiction and for mootness. Because the parties did not ask the Court to retain jurisdiction over pending and future fee applications—either in the stipulated order of dismissal or in connection with the UST motion to convert or dismiss—the Court was divested of subject matter jurisdiction over these matters on entry of the dismissal order. *See In re Sweports, Ltd.*, 511 B.R. 522, 525 (Bankr. N.D. Ill. 2014); *In re Iannini*, 487 B.R. 434, 438-39 (W.D. Pa. 2012). The Court's careful review of case law in this and other jurisdictions persuades the Court that this result is appropriate.

As an initial matter, the Court notes that the underlying Chapter 11 case was dismissed for cause under § 1112(b) of the Bankruptcy Code, the statutory effects of which are provided for by § 349(b) of the Bankruptcy Code, representing "an event distinct from closure of a case." *In re Kent Funding Corp.*, 290 B.R. 471, 475 (Bankr. E.D.N.Y. 2003). Section 349(b) provides:

> (b) Unless the court, for cause, orders otherwise, the dismissal of a case other than under section 742 of this title—
>
> (1) reinstates—
>
> > (A) any proceeding or custodianship superseded under section 543 of this title;
> >
> > (B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2),
> >
> > (C) any lien avoided under section 506(d) of this title;
>
> (2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and
>
> (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

11 U.S.C. § 349(b). "'The basic purpose of [Section 349(b)] is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case.'" *Kent Funding Corp.*, 290 B.R. at 475 (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 338 (1977)). "Unless the court . . . orders otherwise," dismissal under § 349(b) returns the Debtor to its pre-bankruptcy status and the estate ceases to exist. 11 U.S.C. § 349(b); *Kent Funding Corp.*, 290 B.R. at 476; *see also In re Sweports, Ltd.*, 511 B.R. 522, 525 (Bankr. N.D. Ill. 2014) (noting the dismissal order terminates the estate); *In re Garnett*, 303 B.R. 274, 278 (E.D.N.Y. 2003) ("[T]here simply is no bankruptcy estate after the dismissal has been entered."). In this case, the Court did not otherwise order as permitted by § 349(b) of the Bankruptcy Code, nor did the movants request the retention of jurisdiction by the Court in any order of dismissal. As a result, the Debtor's estate terminated on the entry of the dismissal order on August 26, 2014, except as to the unpaid UST quarterly fees.

Because there is no estate from which the movants' fee applications can be paid, the fee applications—both those that were pending before dismissal and future applications—are moot. *See Sweports*, 511 B.R. at 524-25. When presented with the same issue of whether the bankruptcy court has jurisdiction to review fee applications of professionals retained by the creditors' committee after a dismissal order is entered without the express retention of jurisdiction, the *Sweports* court similarly concluded that the "disappearance" of the estate moots the court's review of fee applications under § 330 of the Bankruptcy Code. *Id.* As Judge Goldgar observed, the court's § 330 reasonableness review of professional fees is only appropriate for awards that are payable "*from the bankruptcy estate*." *Id.* at 524 (emphasis added); *see also Barron v. Countryman*, 432 F.3d 590, 595 (5th Cir. 2005) ("The Code requires

8

court approval of all attorneys fees sought to be paid *from the estate of the debtor*."); *In re McDonald Bros. Constr., Inc.*, 114 B.R. 989, 994 (Bankr. N.D. Ill. 1990) (explaining that compensation under § 330 is "necessarily payable from the estate" because § 503(b)(2) makes the compensation awarded an administrative expense entitled to priority). When the estate no longer exists, § 330 review becomes "a purely academic exercise having no effect" on the parties. *Sweports*, 511 B.R. at 525. The Supreme Court has long held that "federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). When a court can no longer affect the rights of litigants before it, the case is moot, and the court lacks subject matter jurisdiction to decide it. *Fox v. Bd. of Trs. of the State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994). Following this line of reasoning, the Court's August 26, 2014 order dismissing the Debtor's Chapter 11 case divested this Court of subject matter jurisdiction and rendered moot the fee applications related to the bankruptcy proceeding. The Court must therefore deny the Joint Motion seeking court approval of professional fees because the Court does not have and was not asked to retain subject matter jurisdiction pursuant to § 349(b) of the Bankruptcy Code.

Had the joint movants requested that the order of dismissal include a provision by which the Court retained post-dismissal jurisdiction over the administration of fee applications, and had the Court exercised its discretion and granted such a request, the Court could have properly exercised jurisdiction over the professional fee applications. *See Iannini*, 487 B.R. at 439. "Courts may determine the propriety of compensation in an underlying bankruptcy case post-dismissal by explicitly retaining jurisdiction." *Id.*; *see also In re Quaker Distrib. Inc.*, 189 B.R. 63, 66 (Bankr. E.D. Pa. 1995); *Matter of Samford*, 125 B.R. 230, 234 (E.D. Mo. 1991); *Matter of Mandalay Shores Co-op. Hous. Ass'n*, 60 B.R. 22, 23 (Bankr. M.D. Fla. 1986). When a court

9

retains jurisdiction as to a fee matter, it invokes the exception of § 349(b)(3) and "for cause, orders otherwise." 11 U.S.C. § 349(b), (b)(3). "Retaining jurisdiction [does] not recreate the bankruptcy estate; rather, it prevent[s] the immediate revesting of the estate, pursuant to 11 U.S.C. § 349(b)(3), for purposes of hearing [the] final fee application." *In re Fox*, 140 B.R. 761, 764 (Bankr. D. S.D. 1992). Conversely, where jurisdiction is not expressly retained, the court "presumptively lacks jurisdiction over the issue." *Iannini*, 487 B.R. at 439; *see also In re Ragland*, No. 05-18142, 2006 Bankr. LEXIS 1436, at *19-20 (Bankr. E.D. Pa. May 25, 2006) ("[N]either dismissal order retained jurisdiction over the funds . . . . Thus, by virtue of section 349(b)(3), those funds . . . are no longer estate property. Accordingly, it would appear that this court has no power to award those funds . . . .").

In this case, the order of dismissal did not include a provision for the retention of jurisdiction over fee applications, and the Court finds no post-dismissal basis to retain jurisdiction as to these applications. During the three weeks that passed between the filing of the UST motion to convert or dismiss and the scheduled hearing date, counsel for the various estate professionals had ample opportunity to request the Court's retention of jurisdiction over pending and future fee applications and to participate with the UST in the drafting of the consent order of dismissal. Well in advance of the scheduled hearing, the Creditors' Committee filed a Statement of Joinder in Support of the UST motion to convert or dismiss, reserving its rights to seek ancillary relief—but the Committee never acted on that claimed reservation prior to the hearing or at the hearing (ECF No. 235). No other party responded to the UST motion. The Court convened a hearing on the UST motion on August 28, 2014 as scheduled, but no party in interest appeared or requested to be heard otherwise. Nothing was heard from counsel except for the Harris Beach letter of August 27, 2014 and the Arent Fox letter of August 28, 2014 (ECF Nos.

10

242, 245). Those letters simply asserted that the Court should exercise jurisdiction over the fee applications despite dismissal.

To be clear, this Court's decision is jurisdictional only and makes no determination as to the merits of the movants' fee claims. As was observed by the *Sweports* court, "[t]his decision, it should be emphasized, is strictly jurisdictional. The decision concerns the court's power to decide [the professionals'] rights to be paid from a bankruptcy estate that no longer exists. It is not a decision that [the estate professionals] have no rights under non-bankruptcy law to be paid from some other source . . . ." *Sweports*, 511 B.R. at 526 n.3; *see also In re Elias*, 188 F.3d 1160, 1162 (9th Cir. 1999) ("Because we agree with the bankruptcy court that the state court is fully capable of resolving the fee dispute in this case, we hold that the bankruptcy court did not abuse its discretion in declining to decide the fees."). In sum, the movants' rights to seek relief in other forums are unaffected by this Court's determination that it lacks subject matter jurisdiction to determine the professional fee applications.

The Court recognizes that some cases have held that bankruptcy courts have jurisdiction over post-dismissal fee determinations, several of which were referenced in the August 27, 2014 and August 28, 2014 letters filed by Harris Beach and Arent Fox.[2] *See Dery v. Cumberland Cas. & Sur. Co.*, 468 F.3d 326 (6th Cir. 2006); *In re Parklex Assocs., Inc.*, 435 B.R. 195 (Bankr. S.D.N.Y. 2010); *In re Fox*, 140 B.R. 761 (Bankr. D. S.D. 1992). However, these cases are distinguishable and do not sway the Court's analysis of the facts presented in this case.

---

[2] Curiously, the present Joint Motion does not reference the jurisdictional issue. Instead, the Joint Motion focuses only on Rule 59(e) and Rule 60(a) FRCP. The Court has nevertheless considered the line of cases finding subject matter jurisdiction after dismissal, despite the absence of express retention of jurisdiction in the dismissal order.

11

In *Parklex*, the Bankruptcy Court for the Southern District of New York retained jurisdiction over a post-dismissal fee application submitted by debtor's counsel in order to deny the award of attorney's fees in a case of suspected bad faith and violation of a prior court order by debtor's counsel. *Parklex*, 435 B.R. at 199-203, 208. The court was primarily concerned with disgorging unearned and unapproved fees obtained from a retainer that the debtor paid counsel during the pendency of the bankruptcy proceeding. *See id.* These concerns of bad faith and disgorgement of fees actually paid are not at play in the present case.

Further, the court in *Parklex* relied on the Sixth Circuit's *Dery* decision, which the Court also finds distinguishable. *See id.* at 208 (citing *Dery*, 468 F.3d at 331). In *Dery*, the Sixth Circuit held that the bankruptcy court retained jurisdiction over post-dismissal fee applications and that 11 U.S.C. § 330 is not limited to fees payable from the bankruptcy estate. *Dery*, 468 F.3d at 330. The *Dery* court opined that § 330 is the "sole mechanism by which fees may be enforced" and that dismissal of a case "cannot abrogate the bankruptcy court's statutorily imposed duty of review." *Id.* The decision seems to suggest that the bankruptcy court has an absolute duty to review professional fee requests, even after dismissal of the bankruptcy case, without the express retention of jurisdiction.

However, there is authority from the Ninth Circuit finding that the bankruptcy court has discretion to determine that it has "ancillary jurisdiction" over a post-dismissal motion to consider fee applications. *See Elias*, 188 F.3d at 1161-62. In *Elias*, the Ninth Circuit held that the bankruptcy court can entertain fee requests after dismissal as a matter ancillary to the original bankruptcy action, or it can exercise its discretion and decline to hear it. *See Elias*, 188 F.3d at 1161-62. The *Elias* court affirmed the decision of the bankruptcy court to decline to exercise ancillary jurisdiction. *Id.* The approach of the *Elias* holding was adopted by the Bankruptcy

Court in the Eastern District of New York in *Kent Funding Corp.*, 290 B.R. at 478. The bankruptcy courts in *Elias* and *Kent Funding Corp.* declined to exercise ancillary jurisdiction to make post-dismissal fee determinations and observed that the parties could seek their fees in state court.³  *See Elias*, 188 F.3d at 1162; *Kent Funding Corp.*, 290 B.R. at 478-79. Therefore, even if this Court found that it had ancillary jurisdiction to rule on the movants' fee applications, the Court would and does decline to exercise its discretion because its jurisdictional decision has no effect on the movants' rights to seek a remedy in other forums.

Finally, the movants' reliance on the ruling in *Fox* is misplaced. *Fox*, 40 B.R. at 764. In that case, the Bankruptcy Court for the District of South Dakota held that it could exercise jurisdiction over post-dismissal motions to consider fee applications because the dismissal order expressly retained jurisdiction. *Id.* Thus, the *Fox* court invoked the § 349(b)(3) exception by "order[ing] otherwise," which "prevented the immediate revesting of the estate" and allowed the court to retain jurisdiction over the fee matter. *Id.*

Because the underlying bankruptcy case has been dismissed, the Court no longer has subject matter jurisdiction and the applications for compensation by estate professionals are rendered moot. The Court therefore denies the Joint Motion to Vacate the Final Decree to the extent it requests that the Court consider the fee applications for the reasons that the Court no longer has subject matter jurisdiction, and the fee applications have been rendered moot.

## CONCLUSION

The Joint Motion to Reconsider and Vacate the Final Decree is **GRANTED in limited part** for the purpose of correcting a clerical error in the docket text of ECF No. 250, and the

---

³ Notably, like *Parklex*, the facts presented to the Ninth Circuit in *Elias* decision concerned disgorgement of fees already paid to estate professionals. *See Elias*, 188 F.3d at 1161.

Clerk is directed to make an entry correcting the docket text of ECF No. 250 to indicate that the case is administratively closed as a result of the order of dismissal granted under § 1112(b) of the Bankruptcy Code. The Joint Motion is **DENIED in all other respects** because (1) the movants fail to demonstrate grounds for altering the dismissal order under Rule 60(a) FRCP and (2) the Court did not retain subject matter jurisdiction to make post-dismissal fee determinations in this case, rendering the applications for compensation moot at dismissal.

IT IS SO ORDERED.

DATE: September 25, 2014 _____/s_____

HONORABLE PAUL R. WARREN
UNITED STATED BANKRUPTCY JUDGE